UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BBC CHARTERING & LOGISTIC GmbH & CO. KG | § § § | |
| Plaintiff | § § | |
| | § | CIVIL ACTION NO. 4:11-cv-3697 |
| V. | § § | **ADMIRALTY** |
| | § | |
| THOMPSON LOGISTIC LTD., GREAT EASTERN ENERGY CORPORATION, LTD., and AG EQUIPMENT CO. | § § § § § | Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure |
| Defendants | § | |

## MEMORANDUM IN OPPOSITION TO
## MOTION TO VACATE RULE B ATTACHMENT

The plaintiff, BBC Chartering & Logistic GmbH & Co. KG ("BBC"), submits this Memorandum in Opposition to AG Equipment Co.'s Motion to Vacate Rule B Attachment (Doc. # 14). BBC has attached certain property in this case pursuant to Rule B of the Supplemental Admiralty and Maritime Rules. AG Equipment Co. ("AG") has moved this Court for a hearing to show cause why the attachment should not be vacated pursuant to Rule E(4)(f). BBC submits this memorandum to discuss the applicable standard and to show why the attachment should not be vacated. In addition, as discussed more fully below, BBC intends to pursue sanctions in connection with the filing a signed declaration, Document 15-7, which contains demonstrably false representations of facts that are material to this case.

## FACTS

AG and Great Eastern Energy Corporation, Ltd. ("GEEC") entered into a contract whereby AG was to sell and GEEC was to buy a particular cargo. According to AG, this

contract was memorialized in a Purchase Order # GEECL/6100000151. Pursuant to the terms of that sales contract, one of the merchants (either AG or GEEC) was to arrange for transportation. The merchant in charge of arranging transport would have then contracted with a shipping intermediary, such as a freight forwarder, which would book the cargo on board a vessel on behalf of the merchant. As discussed more fully below, it seems that GEEC was responsible for arranging transport.

It is common practice in India for a merchant to engage several intermediaries to solicit bids for the same cargo. The intermediary that returns to the merchant with the best bid will be granted authority to contract for carriage. In this situation, however, it appears that GEEC gave actual booking authority up front to several intermediaries with the intention of continuing to negotiate its position and breach contracts as it wished. This inference is based upon the following facts.

On August 11, 2011, Thompson Logistic Ltd. ("Thompson"), a shipping intermediary, contacted BBC and provided BBC with a precise description of the cargo at issue in this case, noted that the cargo was originating at AG's facility in Broken Arrow, and asked BBC to offer a price for shipping the cargo. *See* Email Chain with Thompson, attached hereto as "Exhibit A." Thompson stated that the sale was on exworks terms such that the buyer, GEEC, would be responsible for the transportation.[1] *Id.* After negotiations took place, BBC and Thompson agreed on August 16 that the cargo would be shipped between September 7 and September 22.

---

[1] "Ex-works" is an example of an Incoterm. Incoterms (short for International Commercial Terms) are industry terms that define the responsibilities of a buyer and seller in a sales contract for transport of the object of sale. "Incoterms are recognized through their incorporation into the Convention on Contracts for the International Sale of Goods ("CISG")." *BP Oil Int'l., v. Empresa Estatal Petoleos de Ecuador*, 332 F.3d 333, 335 (5th Cir. 2003) (citing United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 668 (1980), reprinted at 15 U.S.C. app. (entered into force Jan. 1, 1988)). Designating a sales contract as "exworks" has two effects: (1) the buyer is responsible for arranging transport, and (2) title passes when the cargo leaves the seller's warehouse.

*Id.*  This agreement was memorialized in a signed booking note.  *See* Booking Note, attached hereto as "Exhibit B."

Throughout the course of these dealings several other shipping intermediaries contacted BBC to solicit offers for cargo described almost exactly the same as the cargo at issue here and to be transported from Houston to Kolkata, purporting to be acting on behalf of merchants.  One of these intermediaries was Care Container Lines ("Care Container"). On August 16, shortly after BBC and Thompson finalized the booking of the cargo, Care Container approached BBC, soliciting BBC to offer a rate for the same cargo that BBC had just booked with Thompson, and noting that the sale was exworks.  *See* Email Chain with Care Container, attached hereto as "Exhibit C."  BBC responded to Care Container that BBC had already booked the cargo with another company.  *Id.*  On August 30, Care Container again contacted BBC, explaining that they knew that BBC was having problems with the freight forwarder (Thomspon), which Care Container was able to correctly identify as being located in the USA, and Care Container was also able to correctly state that Thompson had booked the cargo with BBC exactly two weeks prior.[2]  *Id.*  On August 31, Care Container sent BBC a work order, showing that GEEC had given authority to Care Container to book the cargo.  *Id.  See also*, Work Order, attached hereto as "Exhibit D."  Then, on September 27, the Chief Commercial Officer of GEEC, Mr. Arun Nevatia, contacted BBC directly, stating that the cargo belonged to GEEC and that Care Container had authority to negotiate the booking.[3]  *See* Email Chain with GEEC, attached hereto

---

[2] The fact that Care Container was able to correctly identify the nationality of Thompson, and was also able to precisely indicate the date that Thompson booked with BBC, strongly suggests that Care Container received this information from GEEC.  If GEEC knew that Thompson had booked this cargo on their behalf on August 16, then it seems very likely that GEEC gave Thompson authority.

[3] As discussed more fully below, this communication shows that GEEC's declaration, Document # 15-7, is untrue.  BBC therefore submits that GEEC has committed a fraud upon this Court.

as "Exhibit E." Despite these representations, BBC honored its contract with Thompson and did not book the cargo with a different intermediary.

Thompson apparently experienced problems performing under the terms of the booking note and was unable to have the cargo ready for shipment on the contemplated dates. *See* Exhibit A. On or about September 23, BBC and Thompson agreed to ship the cargo on a substitute vessel from October 15 through 31. *Id.* Chief among Thompson's excuses was that there were difficulties in arranging the Letter of Credit, which would serve as payment between GEEC and AG. *Id.* On October 4, a Letter of Credit was finally issued for the benefit of AG stating that the terms of the underlying sale were CFR[4], such that the seller, AG, would be responsible for the transport. *See* Document # 15-1. On October 5, the issuing bank sent an "Advising Export Letter," stating the terms of the Letter of Credit. *Id.* The next day, on October 6, Thompson repudiated the booking note with BBC, stating that on the previous day, October 5, GEEC had determined to hold shipment unless Thompson could secure a lower freight. *See* Exhibit A.

If Thompson's representations are accurate, then GEEC authorized Thompson to book the cargo with BBC, while all along planning to breach and ship the cargo with a different carrier if it could find a lower rate (e.g. through Care Container or any of the other intermediaries that it engaged). If AG is correct that AG was all along responsible for arranging transport, then it is very strange that GEEC would have continued to solicit bids for the transport. There is therefore much to be discovered regarding each party's involvement in authorizing the BBC booking and subsequently repudiating the same.

## LAW AND ARGUMENT

---

[4] CFR is another example of an Incoterm. Designating a sales contract as CFR has two effects: (1) the seller is responsible for arranging transport; and (2) title passes when the cargo crosses the rail of a ship.

**1. Standards under Rule B and Rule E(4)(f)**

Rule B attachment requires the following *prima facie* showing: (1) the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty; (2) the defendant cannot be found within the district in which the action is commenced; (3) property belonging to the defendant is present or will soon be present in the district; and (4) there is no statutory or general maritime law prohibition to the attachment. *See* Schoenbaum, *Admiralty and Maritime Law* at p. 1059 (4th Ed.). BBC alleged each of these elements in its Amended Complaint. *See* Document # 9. Attachment was therefore proper under Rule B.

Under Rule E(4)(f), "[o]nce a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f), and 'a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E.'" *Naftomar Shipping and Trading Co. v. KMA Int'l S.A.*, 2011 WL 888951 (S.D. Tex. 2011)(Slip Copy). The Southern District of Texas in *Naftomar* clarified the plaintiff's burden in a Rule E(4)(f) hearing as follows:

> [A]t a post-arrest hearing, the plaintiff has the burden to establish probable cause for the arrest. The hearing is not intended to definitively resolve the dispute between the parties; rather, the Court must make a preliminary determination whether reasonable grounds exist for the arrest. **Thus, courts in Rule E(4)(f) hearings do not make binding determinations of fact, but are merely holding that it is *likely* that alleged facts are true**.

*Id.* at *3 (internal quotations and citations omitted)(emphasis added). The Court also noted that "[p]robable cause is less than a preponderance of the evidence, and it has been described as a 'fair probability' that the asserted fact is true. *Id.* at Note 2 (citing *Wajilam Exports,* 475 F.Supp.2d at 278-79; *Illinois v. Gates,* 462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527

(1983)).  According to the standards described above, therefore, BBC needs only to show that there is a likelihood (though less than a preponderance) that BBC's alleged facts are true.

BBC's Amended Complaint and Memorandum in Support of Rule B Attachment allege two alternatives: either AG is the owner and breaching party, or GEEC is the owner and breaching party.  *See* Documents # 9 and 12.  If it is likely that either alternative is true, then attachment will survive the Rule E(4)(f) standard.  BBC's assertion that GEEC is the owner and breaching party is based upon communications between BBC and Thompson and other documentary evidence, which are made exhibits to BBC's pleadings.  BBC's alternative contention that AG is the owner and breaching party is based upon the representations of AG.  BBC therefore has probable cause to believe that its allegations are true.  At this stage BBC is not required to prove its case, but merely to show that it is likely that attachment is proper.  If BBC's burden were higher, then BBC would risk losing security for its claim, and the Court would risk losing jurisdiction, all before the parties have had a chance to conduct any discovery.

## 2. Whether AG is the Owner of the Cargo

AG's Memorandum in Support of Motion to Vacate Rule B Attachment alleges that AG is the sole owner of the cargo because the sale was on CFR terms rather than exworks terms.  The terms of the sale are purported to be memorialized in a Purchase Order # GEECL/6100000151 (the "Purchase Order").  Despite multiple requests, AG continues to refuse to produce the Purchase Order, which is the best evidence of its terms.  Instead, AG has produced three alternative pieces of evidence of the terms of the Purchase Order: a declaration of AG (Document # 15-3); a declaration of GEEC (Document # 15-7); and a Letter of Credit (Document # 15-1).  Naturally, the fact that AG provides these pieces of evidence rather than the Purchase Order raises suspicion of their accurate portrayal of the terms of the Purchase Order.

Further raising suspicion is the fact that all three pieces of evidence provide different dates for the Purchase Order. The declaration of AG gives the date of the Purchase Order as September 4. The declaration of GEEC gives the date as April 9, with an amendment date of September 29. The Letter of Credit variously lists the date as April 9 (Clauses 45A and 46A) and August 9 (Clause 47A).

Another suspicious fact is that the Letter of Credit was issued on October 4, noting the "Latest Date of Shipment" as October 15. The cargo was not ready for shipment by October 15, as part of the cargo arrived in Houston on October 17, and part arrived on October 21. *See* U.S. Marshal's Process Receipt and Return, attached hereto as "Exhibit F." The Letter of Credit was therefore void as of October 15 and could not have been used for payment between GEEC and AG. It appears that this Letter of Credit may have been issued for the purpose of creating evidence that payment had not yet been made to AG, in order to avoid the attachment, knowing that it would be impossible for the Letter of Credit to be acted upon.

Another cause of suspicion is that the Purchase Order was purportedly amended on September 29, a few days before the booking note with BBC was repudiated. *See* Document # 15-7. It may be that after the cargo was arrested AG and GEEC agreed to a pre-dated amendment to the Purchase Order for the purpose of avoiding attachment, as they knew they were likely to repudiate the booking note, and they knew that BBC would seek security. Because of these suspicions, which are exacerbated by the conspicuous fact that AG refuses to produce the Purchase Order, BBC should be entitled at the very least to some discovery related to the Purchase Order and the facts surrounding the evidence produced by AG thus far.

Finally, the declaration of GEEC contains fraudulent misrepresentations. As discussed more fully below, GEEC contacted BBC via email and stated that it had given Care Container

authority to negotiate the booking with BBC and that the cargo "belongs to us."  BBC submits that this statement by GEEC alone is enough to support a fair probability that GEEC is the owner of the cargo and breaching party, such that the attachment should not be vacated.

In summary, despite AG's recently produced evidence, there is still probable cause to believe that GEEC is the owner of the cargo.  The evidence provided by AG to prove that GEEC cannot be the owner of the cargo is insufficient to refute this likelihood because: (1) better evidence is readily available and in the hands of AG, in the form of the actual Purchase Order; (2) the evidence provided by AG contains unexplained inconsistencies relating to the date of the Purchase Order, such that it is uncertain whether they are even referring to the same document; (3) the declaration of GEEC contains fraudulent misrepresentations; (4) the Letter of Credit may be a sham transaction designed to avoid attachment; and (5) GEEC represented to BBC that it owned the cargo.  It is therefore likely that GEEC is the owner of the cargo.  Before the Court vacates the attachment, which would result in BBC's loss of security and the Court's loss of jurisdiction, BBC should be entitled to some discovery related to the Purchase Order and the evidence produced by AG thus far.

### 3. Whether AG Entered Into an Agreement with BBC through Thompson

Thompson is a shipping intermediary.  The purpose of such intermediaries is to book transport on behalf of merchants who have cargos.  The usual course of affairs is that either the seller or the buyer will first authorize the intermediary to act as its agent in arranging the transport.  After the merchant has granted authority to the intermediary, the intermediary will contract with a carrier.

The fact that Thompson contracted with BBC to carry this cargo on behalf of merchants, and the fact that Thompson was able to provide such precise specifications of the cargo including

8

the correct identity of the manufacturer and the approximate dates of delivery, makes it very likely that Thompson had already received authority from either the buyer or the seller to negotiate the booking. Further evidence of Thompson's authority is that Thompson correctly represented in mid-to-late September that the Letter of Credit had not yet been issued – the Letter of Credit was issued October 4. Even further evidence is that Thompson represented that it lost authority on October 5, when the Advising Export Letter, noting CFR terms, was issued on October 5. Thompson could not have had such extensive knowledge of all of these details unless it were working very closely with one of the merchants. These facts support not only a likelihood, but a near certainty that Thompson was authorized by one of the merchants to negotiate the booking with BBC.

BBC has been under the impression that the sales contract was exworks, such that GEEC was responsible for arranging transport. AG meanwhile contends that the sales contract was CFR all along, such that AG was always responsible for transport. If AG was always responsible for transport, and if Thompson was authorized by one of the merchants to book the cargo with BBC, then there is probable cause to believe that AG granted Thompson authority to book the cargo with BBC. Because there is probable cause to believe that Thompson was AG's agent, AG is not entitled to vacate the attachment. To the contrary, discovery should proceed to determine the true nature of Thompson's agency relationship.

### 4. Whether Care Container's Work Order is Authentic

On August 31, Care Container sent BBC a Work Order, showing that GEEC had given authority to Care Container to negotiate the booking, and showing that GEEC, rather than AG, was the merchant responsible for arranging transport. In GEEC's Declaration, Document # 15-7, GEEC attests that this work order is a forgery. Specifically, GEEC attests as follows:

9

> 3. That our Company has not issued any Work Order in the name of any third party for the purpose of shipment of Compressors from Houston Port to Kolkata Port
>
> 4. That the letter dated August 31, 2011 in the name of M/s Care Container Lines was not issued by the Company and it seems that M/s Care Container Lines has forged the said letter
> . . . .
>
> 6. That it is the responsibility of M/s AG Equipment Company to ship the compressors from Houston Port to Kolkata Port.

These statements are demonstrably false. On September 27, the Chief Commercial Officer of GEEC, Mr. Arun Nevatia, sent BBC an email that directly contradicts GEEC's Declaration. *See* Exhibit E. The email ratifies the Work Order, states that GEEC is the owner of the cargo, and provides in pertinent part as follows:

> The cargo for which Ankit (Care Container) is in touch with you for the transportation of the same from Houston Port to Kolkata / Haldia Port belongs to us.
> . . . .
> We would like to get the transportation done through Care Container only as they are working with us for the last three years.

*Id*. GEEC has therefore committed a fraud on the Court by its declaration, Document # 15-7. BBC intends to seek sanctions in connection with the filing of this declaration.

### **5. Whether AG is Found within the District**

In order for BBC to establish that AG cannot be found within the district, as required by Rule E(4)(f), BBC must establish that either (1) AG is not subject to the personal jurisdiction of the Court, or (2) AG is not amenable to service of process within the district. In this case, AG is not amenable to service of process within the Southern District of Texas.

In order for BBC to serve AG within the district, BBC would have to serve "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" within the district. *See* FRCP 4(h)(1)(B). AG provides no evidence that

Michael Green, a "Unit Sales" contact according to AG's website, is "authorized by appointment or by law to receive service of process." The website does not provide any address in Houston for AG (it merely provides a 713 phone number)[5], and according to the Texas Secretary of State, AG has not been registered to do business in Texas since 1984.[6] BBC confirmed this information prior to filing the Amended Complaint. AG, therefore, is not authorized to do business in Texas and has no agent for service of process within the district. Because AG is not amenable to service of process within the district, the requirement under Rule E(4)(f) that the defendant not be found within the district is satisfied.

## CONCLUSION

In order to show cause why the attachment should not be vacated under Rule E(4)(f), BBC's burden is to show probable cause for believing that the allegations in the complaint are true. Probable cause does not require a preponderance of the evidence, but merely a likelihood. BBC has shown that it is likely that each of its allegations is meritorious. BBC has not drawn its allegations out of thin air, but has based them upon the actions and representations of the parties to this suit and upon reasonable inferences. AG's rebuttal evidence does not prove that BBC's allegations are false, nor does it make BBC's allegations unlikely to be true. It is a near certainty that Thompson was hired by one of the merchants, and AG's contradictory evidence is dubious at best and fraudulent at worst. There is simply not enough evidence to show that BBC's allegations are clearly false. There is therefore a likelihood that BBC's allegations are true, constituting probable cause, such that attachment should not be vacated.

---

[5] AG provides the business card of Michael Green with a Houston address of 7500 San Felipe Ste 600, *see* Document 15-6, and states that AG can receive service at this address. A Google search of this address (including suite number) does not return any mention of AG. Rather, it returns the website of a real estate company: http://www.amvestproperties.com/about.php (last visited November 21, 2011).

[6] This information was provided by the Texas Secretary of State's office in a telephone communication.

In weighing these considerations, BBC urges the Court to remember that attachment provides BBC with security for its claim and provides the Court with *in personam* jurisdiction over the defendants. This is of utmost importance as to GEEC. If discovery proves that GEEC is both the owner and the breaching party, such that BBC's recovery will be against GEEC, then attachment of this cargo is essential. If this cargo were to sail, and if BBC were forced to litigate in India, where the backlog on civil dockets is legendary[7], this case may never be resolved.

WHEREFORE, BBC respectfully requests that this court deny AG Equipment Co.'s Motion to Vacate Rule B Attachment.

                       Respectfully submitted,

                       */s/ James T. Bailey*
                       Jason P. Waguespack, T.A.
                         Federal I.D. No. 268357
                       James T. Bailey
                         State Bar No. 24031711
                         Federal I.D. No. 33047
                       GALLOWAY, JOHNSON, TOMPKINS,
                       BURR & SMITH
                       1301 McKinney, Suite 1400
                       Houston, Texas 77010
                       Telephone: (713) 599-0700
                       Telecopier: (713) 599-0777

OF COUNSEL:
Frederick W. Swaim III (LA #28242)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone: (504) 525-6802
Telecopier: (504) 525-2456

---

[7] MSNBC reported in 2009 that it may take 466 years to clear all of the cases then docketed in India. *See* Report: India Court 466 Years Behind Schedule, available at http://www.msnbc.msn.com/id/29164027/ns/world_news-south_and_central_asia/t/report-india-court-years-behind-schedule/#.Tsw6pnOmdyE (last visited November 22, 2011). The Times of India reported in 2010 that it may take 320 years to clear the docketed cases. *See* Courts will take 320 Years to Clear Backlog Cases, available at http://articles.timesofindia.indiatimes.com/2010-03-06/india/28143242_1_high-court-judges-literacy-rate-backlog (last visited November 22, 2011).

ATTORNEYS FOR PLAINTIFF
BBC CHARTERING & LOGISTIC GMBH & CO. KG

## CERTIFICATE OF SERVICE

I do hereby certify that on November 23, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*s/ James T. Bailey*